## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION DIVISION

| | | |
|---|---|---|
| **Sicily Yarbrough,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. |
| | ) | |
| **Auburn University, Alabama** | ) | **Jury Trial Demanded** |
| **Cooperative Extension System, and** | ) | |
| **Gloria Marks,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

## I. JURISDICTION AND VENUE

1. This is an employment discrimination action in which the Plaintiff, Sicily
   Yarbrough, alleges that the Defendant, Gloria Marks, in her individual and
   official capacities violated 42 U.S.C. § 1981 brough through 42 U.S.C. §
   1983 by discriminating and retaliating against Plaintiff because of her race
   and race based complaints, and Defendants, Auburn University, and
   Alabama Cooperative Extension System, violated Title VII of the Civil
   Rights Act of 1964, as amended (42 U.S.C. §2000e) by continuing the
   discrimination and retaliation and relying on discriminatory and retaliatory
   discipline to effectuate Yarbrough's termination,

2. This Court has jurisdiction over these claims under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. §§ 2201 (remedies) and 2202 (further remedies).

3. Venue is proper because the Defendant employed Plaintiff in Geneva County, Alabama, within the Southern Division of the Middle District of Alabama.

## II. PARTIES

4. Plaintiff, Sicily Yarbrough, ("Plaintiff" or "Yarbrough") is an adult resident of the State of Alabama.

5. Defendant, Auburn University ("Auburn"), is a public academic institution situated in Lee County, Alabama.

6. Defendant, Auburn University, Alabama Cooperative Extension System, and Gloria Marks, ("ACES") is an outreach organization operating the land-grant of Auburn University.

7. Defendant, Gloria Marks, was the former County Extension Coordinator for Geneva County, employed by ACES and Auburn and directly supervised Plaintiff.

8. Auburn employed Plaintiff through ACES to work in the Geneva County office.

### III. ADMINISTRATIVE PREREQUISITES

9.  On March 5, 2025, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") pro se. (Charge No. 425-2025-00497) (Exhibit 1).

10. Without investigation, and with notice that Plaintiff was represented and planned to amend the charge, the EEOC issued a Determination and Notice of Rights on March 17, 2025. (Exhibit 2)

11. Plaintiff filed a second EEOC charge to ensure all claims would be included in the scope of the charge on April 11, 2025, which the EEOC split into two charge numbers, one for each Defendant. (Charge No. 425-2025-01101 and 01102). (Exhibit 3).

12. Before the expiration of 90 days from the issuance of the March Determination and Notice, the parties entered into a tolling agreement to stay the statute of limitations and allow the 180 administrative process to run for the new charges.

13. More than 180 days has passed since the filing of the 101 and 102 charges.

14. Plaintiff has requested a Determination and Notice of Rights.

15. Plaintiff has exhausted all administrative pre-requisites to suit on her Title VII claims.

16. Plaintiff has no administrative pre-requisites to suit for any claims under §1981/§1983.

## IV. FACTS

17. The Alabama Cooperative Extension System is the primary outreach organization for the land-grant mission of Alabama A&M University and Auburn University, taking the universities to residents of every county on Alabama.

18. ACES maintains its own business office personnel, operating out of Auburn University.

19. Auburn University issues W-2s to employees of the ACES program within Auburn.

20. Both ACES and Auburn employee policies and procedures apply to Auburn employees assigned to the ACES program.

21. Auburn employees assigned to ACES can access HR through ACES, Auburn, or both.

22. Auburn and ACES (hereinafter "University Defendants") hired Yarbrough in March of 2019.

23. University Defendants hired Yarbrough as an Agent Assistant assigned to ACES.

24. Yarbrough was assigned to and worked out of the Geneva County ACES office.

25. Yarbrough is Black.

26. Yarbrough is married to a White male and has bi-racial children.

27. In her employment, Yarbrough reported to the ACES Coordinator for Geneva County.

28. From 2019 through November or December of 2024, Gloria Marx was the ACES Coordinator for Geneva County.

29. Gloria Marks is Black.

30. Marks was employed by the University Defendants and reported to University Defendants.

31. From 2019 through Plaintiff's termination, most of the other ACES employees in Geneva County were white.

32. At the start of Yarbrough's employment, Marks made multiple racial comments.

33. Marks told Yarbrough she hired Yarbrough because she "needed another Black in the office."

34. Marks commented on Yarbrough's race as related to her marriage telling Yarbrough that white women did not like seeing Yarbrough "walking around with a white man."

35. Marks told Yarbrough the whites on the Geneva County Commission did not like Marks and would always put her last on the agenda.

36. Marks expressed frustrations toward Yarborough when Yarborough would not align with her just because they were the same race.

37. Sometime in 2020, Marks began telling Yarbrough that white employees were treating Yarbrough better than Marks because Yarbrough was "more like them." Ostensibly because of Yarbrough's interracial relationship and refusal to align with Marks on the basis of race.

38. After Marks began alleging that white employees treated Yarbrough different from Marks, Yarbrough began distancing herself from Marks because the comments made her uncomfortable.

39. In October of 2022, Yarbrough filed an HR complaint against Marks.

40. The complaint included allegations of emotional abuse by Marks causing Yarbrough emotional and physical exhaustion and leading to high blood pressure despite her young age.

41. Immediately, Marks began targeting Yarbrough by micromanaging her, surveilling her work, and treating her in a hostile manner.

42. In June of 2024, Yarbrough learned from another employee that Marks stated Yarbrough did "not want to be black" and only wanted "to be black when it's beneficial" to Yarbrough.

43. After learning this, Yarbrough filed an EEO complaint with Auburn HR.

44. Auburn HR received Yarbrough's complaint on June 18, 2024.

45. Yarbrough provided Auburn HR more information related to her complaint by July 18, 2024.

46. Yarbrough expressed concern to Auburn HR about Marks retaliating against her when she learned of the allegations.

47. On July 24, 2024, Auburn HR assured Yarbrough that Marks could not retaliate against her according to policy.

48. Auburn HR sent notice of the formal allegations to Marks on August 5, 2024.

49. Auburn HR interviewed Marks, Yarbrough, and at least one other employee about the complaint.

50. Immediately, Marks stopped speaking to Yarbrough or responding to her work-related inquiries.

51. Marks began surveilling Yarbrough's time and tasks.

52. On August 20, 2024, just 2 weeks after receiving notice of Yarbrough's complaint against her, Marks issued Yarbrough a disciplinary write-up.

53. Marks manufactured the basis for the write-up without any employee corroboration.

54. The write-up included an allegation that Yarbrough had used foul language at a group luncheon – which multiple employees denied.

55. Nine days later, on August 29, 2024, Marks put Yarbrough on a Performance Improvement Plan ("PIP").

56. Marks created the PIP on August 7, 2024 – two days after she learned about Yarbrough's complaint against her.

57. The PIP created heavy record keeping and bi-weekly check-ins for Yarbrough.

58. Yarbrough reported the PIP as continued retaliation to Auburn HR.

59. Auburn HR amended Yarbrough's complaint to include the retaliation allegations in early October of 2024.

60. Immediately after Yarbrough amended her complaint to include the ongoing retaliation, on October 11, 2024, Marks issued Yarbrough a "final warning" written reprimand.

61. Citing the ongoing stress and retaliation causing anxiety and high blood pressure, Yarbrough took medical leave from October 11, 2024 through November 7, 2024.

62. Yarbrough returned to work on Friday, November 8, 2024.

63. On the date of her return, she reported by e-mail to Auburn HR that she had returned to work with doctor authorization because her blood pressure and anxiety levels were improved.

64. Auburn HR responded in part they were working on the report for her case.

65. The office was closed on Monday, November 11, 2024, for Veteran's Day.

66. On November 14, 2024, Marks left the Geneva County office for a meeting and never returned.

67. On November 19, 2024, Yarbrough requested an update from Auburn HR on the status of the case.

68. The same day, Auburn HR responded, stating a draft of the report was under review and should be ready for release before too long.

69. Yarbrough learned on December 12, 2024 that Marks was no longer employed by Defendants and Auburn would be closing the investigation.

70. The closure letter noted Marks had separated from Auburn and Auburn "no longer controls her conduct in connection with an official University program or activity."

71. Auburn HR did not provide Yarbrough with any report related to the investigation.

72. Auburn HR did not take any steps to remove the discipline placed in Yarbrough's file by Marks.

73. From November 14, 2024, through her termination, Yarbrough reported to the Assistant Director of Field Operations, Allie Logan.

74. Logan and Marks had a close friendship.

75. On December 12, 2024, the same date Yarbrough learned Marks was separated from the University Defendants, Logan accidentally texted Yarbrough Marks's personal email address.

76. On December 19, 2024, Logan and Yarbrough met regarding the PIP issued by Marks.

77. Yarbrough continued to question University Defendants about the PIP and discipline as being retaliatory.

78. One issue cited by Marks related to Yarbrough having her children present at the Geneva County office on some occasions.

79. During one of the meetings between Logan and Yarbrough, in December of 2024, Logan told Yarbrough she could have her children on the premises, if needed in an emergency, for a short time.

80. Logan had brought her child to the Ozark extension office on at least one occasion the prior December.

81. Auburn's policies apply uniformly regardless of office location.

82. Marks had previously approved Yarbrough to have her children at the office until she complained about Marks.

83. On February 7, 2025, University Defendants placed Yarbrough on leave to investigate whether she had her children on the property and should be terminated.

84. Yarbrough pointed out that she had only done what Logan had authorized her to do.

85. Yarbrough said Logan had authorized her to have the kids in and out for if needed.

86. Logan responded that there was a misunderstanding between them, and she meant Yarbrough had to communicate with her on a case-by-case basis.

87. University Defendants gave Yarbrough one week, until February 14, 2025, to respond to the allegations of poor performance.

88. On February 14, 2025, Yarbrough submitted a written response noting that the prior discipline and PIP that lead to her administrative leave was all the result of retaliation by Marks and were unsubstantiated.

89. On February 18, 2025, University Defendants terminated Yarbrough citing among other things, her "personal comments" that she submitted in the February 14, 2025 letter.

## V. STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT ONE – Title VII Race Discrimination
### (University Defendants)

90. Plaintiff adopts and realleges paragraphs 1 - 89 above as if fully set out herein.

91. Auburn is an employer under Title VII.

92. ACES is an employer under Title VII.

93. At all times relevant to this lawsuit, University Defendants employed Yarbrough.

94. During her employment, Yarbrough experienced racial statements and comments on a continuing basis.

95. During her employment, Yarbrough experienced discriminatory treatment motivated by or because of her race, or her refusal to automatically align with another member of her race.

96. Because of the continuing harassment and racially disparate treatment, Yarbrough suffered high anxiety and blood pressure and needed medical leave.

97. Marks stated Yarbrough only wanted to be Black when it benefited her and other similar racial statements.

98. As a consequence of University Defendants' unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages and benefits,

embarrassment, humiliation, shame, damage to reputation, mental distress, and emotional pain and anguish.

99. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for compensatory damages, attorney's fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of security adequate relief.

100.    Plaintiff is suffering, and will continue to suffer, irreparable injury from University Defendants' unlawful practices set forth herein unless enjoined by this Court.

## **RELIEF**

WHEREFORE, Plaintiff requests that this Court assume jurisdiction of this cause of action and award the following relief:

a.  Enter a declaratory judgment that University Defendants' policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by Title VII;

b.  Grant Plaintiff a permanent injunction enjoining University Defendants, their agents, successors, employees, attorneys, and those acting in concert with them or at their request from violating Title VII;

c.  Grant Plaintiff an Order requiring University Defendants to make her whole by granting appropriate declaratory relief, back pay, compensatory damages

(including damages for mental anguish), interest, attorney's fees, expenses,

costs; and

d.  Grant Plaintiff such other, further, different, or additional relief and benefits as

justice may require.

### COUNT TWO Race Discrimination
### 42 U.S.C. §1981 through 42 U.S.C. §1983
### (Gloria Marks)

101.    Plaintiff adopts and realleges paragraphs 1 - 89 above as if fully set

out herein.

102.    Defendant Marks was the ACES Exchange Coordinator for the

Geneva County office.

103.    Defendant was Yarbrough's supervisor.

104.    Defendant acted in a supervisory capacity for the benefit of University

Defendants.

105.    During Yarbrough's employment, Marks made racial statements and

comments on a continuing basis.

106.    During Yarbrough's employment, Marks treated Yarbrough in a

discriminatory or disparate manner because of or motivated by her race and

her refusal to automatically align Marks as a Black woman.

107.    Because of the Mark's continuing harassment and racially disparate

treatment, Yarbrough suffered high anxiety and blood pressure and needed

medical leave.

108.    Marks stated Yarbrough only wanted to be Black when it benefited

her and other similar racial statements.

109.    As a consequence of Marks's unlawful conduct, Plaintiff suffered

damages, including but not limited to lost wages and benefits,

embarrassment, humiliation, shame, damage to reputation, mental distress,

and emotional pain and anguish.

110.    Plaintiff has no plain, adequate, or complete remedy at law to redress

the wrongs alleged herein, and this suit for compensatory damages,

attorney's fees, expenses, costs, injunctive relief, and declaratory judgment

is her only means of security adequate relief.

111.    Plaintiff is suffering, and will continue to suffer, irreparable injury

from Marks's unlawful practices set forth herein unless enjoined by this

Court.

## **RELIEF**

WHEREFORE, Plaintiff requests that this Court assume jurisdiction of this

cause of action and award the following relief:

a. Enter a declaratory judgment that Marks's conduct, policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff under §1981 as brought under §1983;

b. Grant Plaintiff a permanent injunction enjoining University Defendants, their agents, successors, employees, attorneys, and those acting in concert with them or at their request from violating §1981 as brought under §1983;

c. Grant Plaintiff an Order requiring Marks to make her whole by granting appropriate declaratory relief, back pay, compensatory damages (including damages for mental anguish), interest, attorney's fees, expenses, costs; and

d. Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT THREE – Title VII Retaliation
### (University Defendants)

112.   Plaintiff adopts and realleges paragraphs 1 - 89 above as if fully set out herein.

113.   Auburn is an employer under Title VII.

114.   ACES is an employer under Title VII.

115.   At all times relevant to this lawsuit, University Defendants employed Yarbrough.

116.    After filing an EEO complaint against Marks with the HR, Yarbrough

immediately began experiencing retaliation up to and including unwarranted

discipline.

117.    Yarbrough never learned the outcome of the investigation into her complaint

because Mark's employment with University Defendants ended.

118.    Yarbrough continued asking for resolution.

119.    University Defendants used the retaliatory discipline to put Yarbrough on

leave.

120.    In response Yarbrough again asserted the retaliation.

121.    University Defendants terminated Yarbrough utilizing the retaliatory

discipline as progressive.

122.    As a consequence of University Defendants' unlawful conduct, Plaintiff

suffered damages, including but not limited to lost wages and benefits,

embarrassment, humiliation, shame, damage to reputation, mental distress, and

emotional pain and anguish.

123.    Plaintiff has no plain, adequate, or complete remedy at law to redress the

wrongs alleged herein, and this suit for compensatory damages, attorney's fees,

expenses, costs, injunctive relief, and declaratory judgment is her only means of

security adequate relief.

124.   Plaintiff is suffering, and will continue to suffer, irreparable injury from

University Defendants' unlawful practices set forth herein unless enjoined by

this Court.

## RELIEF

WHEREFORE, Plaintiff requests that this Court assume jurisdiction of this

cause of action and award the following relief:

a.   Enter a declaratory judgment that University Defendants' policies, practices,

and procedures complained of herein have violated and continue to violate the

rights of Plaintiff as secured by Title VII;

b.   Grant Plaintiff a permanent injunction enjoining University Defendants, their

agents, successors, employees, attorneys, and those acting in concert with them

or at their request from violating Title VII;

c.   Grant Plaintiff an Order requiring University Defendants to make her whole by

granting appropriate declaratory relief, back pay, compensatory damages

(including damages for mental anguish), interest, attorney's fees, expenses,

costs; and

d.   Grant Plaintiff such other, further, different, or additional relief and benefits as

justice may require.

## COUNT FOUR -  Race Retaliation
## 42 U.S.C. §1981 through 42 U.S.C. §1983
## (Gloria Marks)

125.    Plaintiff adopts and realleges paragraphs 1 - 89 above as if fully set out herein.

126.    Defendant Marks was the ACES Exchange Coordinator for the Geneva County office.

127.    Defendant was Yarbrough's supervisor.

128.    Defendant acted in a supervisory capacity for the benefit of University Defendants.

129.    Yarbrough filed multiple race discrimination complaints against Marks with Human Resources.

130.    After learning of the complaints, Marks's conduct toward Yarbrough worsened.

131.    Marks disciplined Yarbrough for false allegations without corroboration.

132.    Marks disciplined Yarbrough for having her children in the building when she had previously approved it.

133.    Marks placed Yarbrough on a Performance Improvement Plan.

134.    Marks gave Yarbrough a written warning.

135.    After Marks's separation of employment, University Defendants used Marks's disciplinary actions to terminate Yarbrough.

136.    As a consequence of Marks's unlawful conduct, Plaintiff suffered

damages, including but not limited to lost wages and benefits,

embarrassment, humiliation, shame, damage to reputation, mental distress,

and emotional pain and anguish.

137.    Plaintiff has no plain, adequate, or complete remedy at law to redress

the wrongs alleged herein, and this suit for compensatory damages,

attorney's fees, expenses, costs, injunctive relief, and declaratory judgment

is her only means of security adequate relief.

138.    Plaintiff is suffering, and will continue to suffer, irreparable injury

from Marks's unlawful practices set forth herein unless enjoined by this

Court.

## **RELIEF**

WHEREFORE, Plaintiff requests that this Court assume jurisdiction of this

cause of action and award the following relief:

e.  Enter a declaratory judgment that Marks's conduct, policies, practices, and

procedures complained of herein have violated and continue to violate the rights

of Plaintiff under §1981 as brought under §1983;

f.  Grant Plaintiff a permanent injunction enjoining University Defendants, their

agents, successors, employees, attorneys, and those acting in concert with them

or at their request from violating §1981 as brought under §1983;

g.  Grant Plaintiff an Order requiring Marks to make her whole by granting

appropriate declaratory relief, back pay, compensatory damages (including

damages for mental anguish), interest, attorney's fees, expenses, costs; and

h.  Grant Plaintiff such other, further, different, or additional relief and benefits as

justice may require.

Respectfully submitted on February 9, 2026,

/s/Leslie Palmer
**Attorney for Plaintiff**
**ASB-0436-L40P**

Leslie Palmer
PALMER LAW, LLC
2 North 20th Street, Suite 900
Birmingham, AL 35203
Telephone: (205) 285-3050
Email:
leslie@palmerlegalservices.com

Defendants to be served by certified mail or waiver.